## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 07 B 2791 |
| BRUCE WERNER, | ) | |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| ————————————— | ) | |
| | ) | |
| HARRIS BANK, N.A., | ) | |
| | ) | Adv. No. 07 A 390 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRUCE WERNER, BETH WERNER, | ) | Judge Pamela S. Hollis |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

This matter comes before the court on the motion of Defendant Bruce Werner
("Werner" or "Debtor") for summary judgment on the complaint. Harris Bank, N.A.,
seeks to avoid a transfer of real property as a fraudulent conveyance. Werner asserts in
his motion that the statute of limitations has passed and consequently the transfer cannot
be attacked. Having reviewed the papers filed and heard the arguments of counsel, the
court denies the motion.

### STANDARD FOR SUMMARY JUDGMENT

The standard for a summary judgment motion is set forth in Fed. R. Civ. P. 56,
made applicable in bankruptcy proceedings via Fed. R. Bankr. P. 7056. Summary
judgment is appropriate under Rule 56 if the moving party shows that no genuine issue of
material fact exists and that it is entitled to prevail in the case as a matter of law. In
ruling on the motion, the court must draw all reasonable inferences from the underlying

facts in the responding party's favor. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 599 (1986); Parkins v. Civil Constructors of Ill., Inc., 163 F. 3rd 1027, 1032 (7th Cir.1998).

A factual dispute is a genuine issue for trial only if it is determinative of the outcome under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). See Frey v. Fraser Yachts, 29 F. 3rd 1153, 1156 (7th Cir.1994). Once the moving party has made a prima facie showing that it is entitled to judgment as a matter of law, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings. Instead, its response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## FINDINGS OF FACT

Pursuant to Local Bankruptcy Rule 7056-1, a party moving for summary judgment must file a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement

> shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion.

Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Bankruptcy Rule 7056-2 to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Bankr.R. 7056-2A(2)(a). Both parties complied with the requirements of Local Bankr.R. 7056.

Werner included three additional uncontested facts in his reply (see docket #60). There is no provision in the Local Bankruptcy Rules for submission of additional material facts by the moving party in its reply. This is in contrast to the specific language of Local Bankr.R. 7056-1 and 7056-2, which require a statement of uncontested material facts, describe how the statement must be organized, and provide for a response.

However, Harris appeared at a hearing before this court the day after the reply was filed. It did not raise any objection to the three additional facts, nor did it request time for a surreply. Additionally, these facts merely recite that certain papers were filed in state court and provide an opportunity for Werner to attach these papers for this court's review. Papers filed in a court proceeding are part of the public record and the court may take judicial notice of their existence.

Having read the statements of material undisputed facts and the supporting exhibits, and reviewed the docket both in this adversary proceeding and in the underlying bankruptcy case, the court makes the following findings of fact:

1. Harris is a banking corporation with its principal place of business located at 111 West Monroe, Chicago, Illinois.

2. The Debtor resides at 22460 South 88th Avenue, Frankfort, Illinois (the "Real Property" or the "Residence").

3. Beth R. Werner ("BRW" or "Beth"), the Debtor's wife, resides at the Real Property.

4. Werner filed a lawsuit against Harris and Werner's co-obligors in September 2002 in the Circuit Court of Cook County, Illinois, seeking rescission of his guarantee liability to Harris ("Cook County Litigation").

5.    The Cook County Litigation related to a series of investments by Debtor and his co-obligors, utilizing $3.2 million in loans from Harris, all guaranteed by the Debtor and his co-obligors.

6.    BRW was not a named Defendant in the Circuit Court Case.

7.    On January 23, 2003, the Debtor, as trustee of the Bruce A. Werner Trust dated January 1, 2000, and BRW, as trustee of the Beth R. Werner Trust dated January 1, 2000, executed a Warranty Deed Tenancy By The Entirety that was recorded on February 4, 2003, as Document No. R2003024743 with the Will County Recorder, transferring the Real Property to the Debtor and BRW as Tenants By The Entirety (the "Transfer").

8.    On July 28, 2005, summary judgment was granted in favor of Harris and against the Debtor in the Cook County Litigation.

9.    On February 16, 2006, a prove-up was held in the Cook County Litigation on the summary judgment previously entered, and a judgment in the amount of $840,122.37 was entered in favor of Harris and against Debtor (the "Judgment"). The Judgment contained the following language, pursuant to Illinois Supreme Court Rule 304(a): "[T]here is no just reason for delaying either the enforcement or appeal from this Order."

10.    The Real Property then became subject to Harris's judicial lien by virtue of two Memoranda of Judgment entered in the Circuit Court of Cook County against Debtor in the amount of $840,122.37, and recorded on February 28, 2006, with the Will County Recorder as document numbers R2006035628 and R2006035629. One Memorandum of Judgment is recorded against the Residence and the other against an adjoining 10-acre parcel.

4

11. On February 24, 2006, Debtor filed his emergency motion in the Cook County Litigation to stay enforcement of the Judgment during his appeal ("Emergency Stay Motion").

12. In his Emergency Stay Motion, Werner stated that Harris "had recently orally questioned the validity of Werners' conveyance of their residence... to tenancy by the entireties in 2003," and further noted:

> That transaction, however, is not subject to being set aside under the "sole intent" standard set forth in section 12-112 of the code of civil procedure. [citations omitted]. Werner certifies that the conveyance was made in part to accomplish a survivorship objective by the manner in which the property was previously titled.

13. Werner executed a "Certification" regarding the transfer of the Residence as part of his Emergency Motion, "certifying" that the conveyance of the Residence was made "in part to accomplish a survivorship objective."

14. In his Emergency Stay Motion, Debtor offered to: (a) stipulate to a judgment of foreclosure on the adjoining 10 acre farmland mortgaged to Harris; (b) assign a note obligation to Harris; (c) provide an appeal bond; and (d) agree to an order restraining dissipation of assets outside Debtor's normal living expenses during appeal.

15. On March 6, 2006, Harris filed a Response in Opposition to Werner's Emergency Motion to Stay Enforcement of Judgment Pending Appeal ("Response to Emergency Stay Motion").

16. On March 8, 2006, the Debtor filed a Reply in Support of Motion to Stay Enforcement of Judgment Pending Appeal ("Reply to Emergency Stay Motion").

17. On March 14, 2006, the Chancery Court entered the Stay Order over Harris' objection. The Stay Order provides, inter alia, that "Werner's motion is granted

and the court's judgment of February 16, 2006 against Werner is stayed pending appeal
on the following conditions..."

18.     Among the conditions is the requirement in paragraph 1(d) that states,
"Werner to file affidavit that he shall not convey interest in residence or any other assets
outside ordinary course (but may pay legal expenses) pending appeal."

19.     On April 27, 2006, Harris filed a Motion for Reconsideration and/or
Modification of the Stay Order ("Reconsideration Motion").

20.     In its Reconsideration Motion, Harris sought permission to conduct
discovery concerning the transfer of the Residence during the state court appeal "so that it
may bring a proceeding that would undo this transaction, without having to wait for the
appellate process to run its course."

21.     In Debtor's Response in Opposition to the Reconsideration Motion,
Werner stated:

> There are three reasons why Harris' request for 'discovery' should
> be denied. First, there is no action pending in which 'discovery'
> can be taken. Harris already has a judgment. The action is
> concluded and a final order has been entered. Harris' ability to
> challenge the conveyance (if the issue is still relevant after the
> appeal) is protected pursuant to the provision of the [Stay Order]
> which restricts transfer of Werner's residence pending appeal.
>
> Second, the issue of the transfer of the residence was considered on
> the prior motion [for the Stay Order]. Harris presented no new
> evidence or argument that the Court did not already take into
> account when it rendered its prior decision. The Court directed
> Werner to file an affidavit committing not to transfer any interest
> in the residence pending appeal. Werner complied with that Order.
>
> Third, the request for "discovery" is the equivalent to denying the
> stay. The only manner in which "discovery" could be taken is by a
> new action or citation proceeding for the purpose of liquidating
> Werner's interest in the residence to satisfy the judgment. The
> expense of defending that action, which may become moot after
> appeal, and the possibility of loss of real estate which could never

be returned in the event the judgment is reversed are the very
reasons a stay was granted in the first place.

22.     Werner also attached, as Exhibit 3 to his Response in Opposition, a

"Certification" that during the appeal Werner "shall not convey any interest in any

residence or other assets outside the ordinary course pending appeal..."

23.     On May 11, 2006, Harris filed a Reply Brief in Support of Its Motion for

Reconsideration and/or Modification of the Court's March 14th Order ("Harris Reply

Brief").

24.     On June 15, 2006, the state court denied Harris' Reconsideration Motion.

25.     On November 14, 2006, the First District Appellate Court affirmed the

Judgment and the mandate was subsequently returned to the trial court on January 17,

2007.

26.     Bruce Werner filed for relief under Chapter 11 of the Bankruptcy Code on

February 19, 2007.

27.     The Debtor's Schedule C reflects Debtor's claim, pursuant to 735 ILCS §

5/12-112, of his homestead exemption in the Real Property in the amount of one hundred

percent (100%).

28.     On May 9, 2007, Harris filed the instant adversary proceeding, seeking to

avoid the Transfer as fraudulent.

## CONTENTIONS OF THE PARTIES

Debtor initially framed the issue before the court as a simple one: The statute of

limitations has run on avoiding the Transfer, and Harris is precluded from prosecuting

this complaint.  Since the Stay Order did not specifically enjoin a fraudulent transfer

action, it did not toll the statute, and the limitations period ran out four years after the

7

Transfer. The Uniform Fraudulent Transfer Act's four year statute of limitations is like a statute of repose, argues Werner, operating as a bar regardless of when the injury was discovered. Werner also asserts that regardless of the effect of the Stay Order, there was no bar on Harris's ability to commence an action against Beth Werner as she was not a party to the state court action.

Harris's response brief raises several legal arguments. First, Harris asserts that under the merger doctrine, it could take action against Werner only as a judgment creditor. As a result, any action it took would be an enforcement of the judgment, and thus enjoined by the Stay Order. Werner disagrees in his reply, arguing that Harris could have sought relief under 740 ILCS 160/8(a)(1), (2) or (3), and that such relief would have been separate and distinct from an enforcement proceeding under subsection 8(b).

Harris next argues that even if the fraudulent transfer action is not an enforcement of its judgment, the Stay Order precluded Harris from bringing such an action while the appeal was pending. To understand why this is so, Harris urges the court to look beyond the four corners of the Stay Order to the papers filed regarding the Emergency Stay Motion as well as Harris's Reconsideration Motion. In his reply, Werner disputes Harris's interpretation and reiterates his argument that the Stay Order did not prohibit Harris from pursuing a fraudulent transfer action.

Third, Harris asserts that 735 ILCS 5/13-216 tolled the statute of limitations, and that the fact that the Stay Order did not specifically enjoin a fraudulent transfer action should not be fatal to this assertion.

Harris also responds to Werner's argument that this statute of limitations is like a statute of repose. First, the UFTA allows actions to be brought within the later of four

years, or one year after the transfer could reasonably have been discovered. In any event, Harris argues, the Illinois Supreme Court has applied tolling provisions to statutes of repose.

As to Beth Werner, Harris supplies two reasons why the statute of limitations was tolled. First, the Stay Order prohibited Harris from taking any action against the Residence, rather than against a specific person. Furthermore, under Illinois law, all parties who have an interest in the property conveyed must be joined to the fraudulent transfer litigation. Harris could not sue Beth without also naming the Werner as a necessary party. Werner did not reply on this issue.

Finally, Harris raises two estoppel arguments. Having successfully argued to the state court that the Stay Order precluded Harris from taking any steps to pursue its fraudulent transfer claim, under the doctrine of judicial estoppel Werner cannot now contend the opposite. Harris also asserts application of equitable estoppel, because it relied on Werner's statements in state court. Werner opposes both estoppel arguments, asserting that since the issues before the state court and this court are not identical, he has not taken inconsistent positions and that Harris has not relied on any such inconsistency.

## CONCLUSIONS OF LAW

A fraudulent transfer action is brought in Illinois pursuant to the Uniform Fraudulent Transfer Act, as adopted at 740 ILCS 160/1 et seq. The statute of limitations for initiating a fraudulent transfer action is found at 740 ILCS 160/10:

> A cause of action with respect to a fraudulent transfer or obligation under this Act is extinguished unless action is brought:
>
> > (a)    under paragraph (1) of subsection (a) of Section 5, within 4 years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(b)      under paragraph (2) of subsection (a) of Section 5 or
subsection (a) of Section 6, within 4 years after the transfer was
made or the obligation was incurred; or

(c)      under subsection (b) of Section 6, within one year after the
transfer was made or the obligation was incurred.

In this proceeding, the four year statute of limitations applies, since Harris's

discovery of the Transfer is not at issue. The Transfer was recorded on February 4, 2003,

and Harris filed this complaint on May 9, 2007. Unless the statute of limitations was

tolled, it passed before Harris filed this adversary proceeding, and Harris would be time-

barred from taking any action.

Illinois law includes a provision for extending the time period during which a

plaintiff may commence an action, and tolling the statute of limitations.

> When the commencement of an action is stayed by injunction, order of a
> court, or statutory prohibition, the time of the continuance of the
> injunction or prohibition is not part of the time limited for the
> commencement of the action.

735 ILCS 5/13-216. Harris contends that the Stay Order stayed the

commencement of a fraudulent transfer action, and thus the time that the Stay Order was

in effect should not count toward the four year limit.

**The Commencement of An Action May Be Stayed By a Court Order That Stays
Discovery, Even If The Order Does Not Specifically Enjoin That Particular Cause of
Action.**

Werner argues that for a court order to toll the statute of limitations, that order

must specifically enjoin the particular cause of action. In support of this proposition he

cites Illinois Bell Telephone Co. v. Allphin, 326 N.E. 2nd 737, 741 (Ill. 1975). Allphin

found a 20 day period within which a notice of protest could be filed under the

Administrative Review Act to be "essentially the administrative equivalent of a statute of

limitations, which, as a general rule, continues to run unless tolling is authorized by

statute." Allphin distinguished a previous case in which the trial court had not
"specifically tolled the 20-day protest period . . . ". But Allphin also found that the trial
court erroneously tolled the 20-day statute, because "[n]o statutory authority permits a
court to toll the 20-day protest period involved in this action."

In this case, a statute does exist that allows the tolling of a statute of limitations
when ordered by a court. Unlike the 20 day period in Allphin, the statute of limitations
for commencing a fraudulent transfer action is not an administrative equivalent – it is a
true statute of limitations. Allphin does not require that a court order must specifically
enjoin a cause of action in order to stay the commencement of that action.

In fact, at least two decisions from the Northern District of Illinois found that
where a court order stays discovery, even though it says nothing about a specific cause of
action, the statute of limitations for commencing an action against the subject of that
discovery is tolled. In Doe v. Bobbitt, three defendants moved to dismiss a second
amended complaint that had added those defendants, on the grounds that the statute of
limitations had run. 698 F. Supp. 1415 (N.D. Ill. 1988), rev'd on other grounds, 881 F.
2nd 510 (7th Cir. 1989).

While the original and first amended complaints were pending, two defendants
obtained a stay of discovery because a motion to dismiss was pending. When the court
ruled on part of the motion to dismiss, the plaintiffs sought to commence discovery, "but
at the urging of the defendants this court denied" the plaintiffs' motion. Id. at 1418.
When the court finally ruled on the entire motion to dismiss, the plaintiffs then began
discovery, and asserted that that discovery led to the addition of the three new defendants.

Judge Duff did not accept this assertion as to all three defendants, since certain facts were within the personal knowledge of the plaintiffs. But he found that the plaintiffs could not have known about one defendant without taking discovery. He noted that 735 ILCS 5/13-216, the statute described earlier in this opinion, permits the tolling of a statute of limitations if commencement of an action is stayed by order of a court:

> Admittedly, this court's stay of discovery in and of itself did not prevent Brenda from filing any claim against Dukes. When coupled with Rule 11, Fed.R.Civ.P., however, the stay worked to prohibit such a filing. Rule 11 requires the signer of every pleading to certify "that to the best of the signer's knowledge, information, and belief found after reasonable inquiry it is well grounded in fact...." Had [plaintiff] filed a complaint against [the third defendant] on a mere hunch, [that defendant] (through her attorney . . ., who is the same attorney who helped the other DCFS defendants obtain the stay of discovery in this case) could have moved for sanctions under Rule 11. Caught between a statute of limitations and Rule 11, [the plaintiff] properly waited until this court lifted the stay of discovery, discovered facts implicating [the third defendant], then amended her complaint.

Id. at 1419. When a court order bars a plaintiff from taking discovery, and the facts that might be discovered are those that must be known before filing a complaint so that the plaintiff does not run afoul of Rule 11, that discovery stay "work[s] to prohibit" that plaintiff from commencing an action. The statute of limitations is therefore tolled during the period that the discovery stay is in effect.

Similarly, the plaintiff in White v. Williams "faced an unpalatable choice: risk Rule 11 sanctions by filing a claim based only on conjecture or risk losing the claim entirely by amending the complaint after the statute of limitations expired. This is precisely the kind of procedural morass that tolling statutes are designed to prevent." 1997 WL 261357, *3 (N.D. Ill. May 8, 1997). Consequently, Judge Plunkett in White v. Williams followed Doe's reasoning and tolled the statute of limitations during a discovery stay.

12

Unlike the doctrine of equitable tolling, 735 ILCS 5/13-216 does not require a

plaintiff to demonstrate that he has exercised all due diligence in order "to obtain vital

information bearing on the existence of his claim." 1997 WL 261357, *2 (quotation

omitted).

Doe v. Bobbitt was cited with approval by the Seventh Circuit when a panel faced

a related issue:

> Tolling statutes are designed to avoid a "procedural catch 22," in which a
> statute or court order prevents a potential plaintiff from properly filing a
> cause of action. Two examples illustrate the procedural complexities cured
> by tolling statutes. In Doe v. Bobbitt, 698 F. Supp. 1415 (N.D.Ill.1988),
> rev'd on other grounds, 881 F.2nd 510 (7th Cir.1989), the plaintiff
> discovered facts sufficient to survive a motion to dismiss only after the
> district court lifted a two-year discovery ban. The court identified a
> situation in which the plaintiff could risk Rule 11 sanctions by filing an
> unfounded claim within the limitations period or wait until after the
> limitations period and file a well-grounded complaint. Because this was
> the type of procedural morass that tolling statutes are designed to prevent,
> the court suspended the prescriptive period during the discovery stay. Id.
> at 1419.

Johnson v. Rivera, 272 F. 3rd 519, 521 (7th Cir. 2001) (deciding that the Illinois

statute of limitations in a § 1983 case must be tolled while a prisoner exhausts his

administrative remedies).

**A Material Question of Fact Exists as to Whether the Stay Order, Which Prevented
Harris From Taking Discovery After the Reconsideration Motion was Denied, Also
Prevented Harris From Properly Filing a Fraudulent Transfer Action.**

The Stay Order stayed Harris's judgment against Werner pending appeal. In its

Reconsideration Motion, Harris sought permission to conduct discovery concerning the

Transfer during the state court appeal "so that it may bring a proceeding that would undo

this transaction, without having to wait for the appellate process to run its course." The

state court denied the Reconsideration Motion.

13

The order denying the Reconsideration Motion did not specifically stay discovery concerning the Transfer. However, that order is the embodiment of the court's determination that despite its request to do so, Harris could not proceed with discovery concerning the Transfer.

When deciding a motion for summary judgment, the court must determine whether the movant has proven there is no genuine issue of fact for trial. The court cannot make such a finding here, because it cannot determine whether Harris could have filed a fraudulent transfer action without running afoul of Rule 11. Harris was not a participant in the Transfer, and the court has no information regarding what Harris knew about the Transfer. Could Harris have filed a factually accurate fraudulent transfer complaint without risking Rule 11 sanctions?

As described above, two courts in the Northern District of Illinois have held that a discovery stay tolls a limitations period when the plaintiff is prevented from gathering facts that would allow him to file a well-founded complaint within that period. Doe v. Bobbitt, 698 F. Supp. 1415; White v. Williams, 1997 WL 261357. If the effect of the order denying the Reconsideration Motion was to prevent Harris from gathering facts that would allow it to file a well-founded complaint, then the statute of limitations was tolled during the time period that the Stay Order and the order denying the Reconsideration Motion were in effect. Since a material question of fact exists as to what Harris knew and whether it had sufficient information to file a well-grounded complaint, the court cannot grant Werner's motion for summary judgment.

Although the motion for summary judgment could be denied on this conclusion alone, the court will consider the remaining legal arguments raised by the parties.

14

**Under the Merger Doctrine, Once the Judgment Was Entered Any Action That Harris Took Against Werner Would Be As A Judgment Creditor and Thus An Enforcement of That Judgment. The Stay Order Prohibited Enforcement of the Judgment and As a Result, Harris Was Enjoined From Commencing A Fraudulent Transfer Action.**

A fraudulent transfer action may be brought by a creditor, and a creditor is a "person who has a claim." 740 ILCS 160/2(d). As in bankruptcy court, "claim" is broadly defined in the Uniform Fraudulent Transfer Act, so that anyone who holds a "right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," is a creditor who may seek to recover a fraudulent transfer. 740 ILCS 160/2(c).

Under Illinois law, pursuant to the merger doctrine, once a judgment based on a contract or instrument is entered, all prior claims from that instrument are merged into the judgment. <u>Poilevey v. Spivack</u>, 857 N.E. 2nd 834, 836 (Ill. App. Ct. 2006). Harris asserts that under the merger doctrine, the entry of the Judgment meant that thereafter Harris only had standing to take action related to the transfer of the Residence, whether by fraudulent conveyance claim, garnishment, or otherwise, <u>as a judgment creditor</u>. As a result, filing a fraudulent transfer complaint would be an action to enforce its judgment and thus a violation of the Stay Order.

A district court decision alluded to this argument in a case where a plaintiff, having obtained a foreign judgment against certain parties, then brought a fraudulent conveyance action. Defendants sought dismissal under the merger doctrine, although they raised the argument too late in the game for consideration:

> Had the issue been properly raised, however, the Court would likely note
> that a judgment against a corporation is a new and distinct obligation of
> the corporation which differs in nature and essence from the original

claim. Miner v. Fashion Enters., Inc., 342 Ill.App.3d 405, 415, 276
Ill.Dec. 652, 794 N.E.2d 902 (1 st Dist.2003). As such, a judgment creditor
may bring a separate action to enforce the judgment. Id.

Full Perspective Video Service, Inc. v. Garcia, 2005 WL 1667807, *3 (N.D. Ill. July 18,

2005) (emphasis added). Full Perspective's dicta supports Harris's contention that once

it obtained a judgment against him, Werner owed it a "new and distinct obligation."

Werner disputes this contention by focusing on the language of 740 ILCS 160/8:

(a)    In an action for relief against a transfer or obligation under this
Act, a creditor, subject to the limitations in Section 9, may obtain:

>   (1)    avoidance of the transfer or obligation to the extent
>   necessary to satisfy the creditor's claim;
>
>   (2)    an attachment or other provisional remedy against the asset
>   transferred or other property of the transferee in accordance with
>   the procedure prescribed by the Code of Civil Procedure;
>
>   (3)    subject to applicable principles of equity and in accordance
>   with applicable rules of civil procedure,
>
>>   (A)    an injunction against further disposition by the
>>   debtor or a transferee, or both, of the asset transferred or of
>>   other property;
>>
>>   (B)    appointment of a receiver to take charge of the asset
>>   transferred or of other property of the transferee; or
>>
>>   (C)    any other relief the circumstances may require.

(b)    If a creditor has obtained a judgment on a claim against the debtor,
the creditor, if the court so orders, may levy execution on the asset
transferred or its proceeds.

Werner argues that Harris could have proceeded under subsection 8(a) to avoid

the Transfer, and then refrained from execution under 8(b). In that situation, alleges

Werner, Harris would not have been acting as a judgment creditor.

This is not so. Werner assumes that because 740 ILCS 160/8(a) allows any

creditor to commence an avoidance action, a party who does so acts only in its capacity

as a creditor. But Illinois law provides that once a judgment based on a contract is entered, all prior claims from that instrument are merged into the judgment. After it obtained judgment against Werner, Harris continued to be an entity with a claim, but that claim was merged into its judgment. Consequently, in any action Harris took post-judgment, Harris would have been acting as a judgment creditor.

Certainly Harris could have commenced an avoidance proceeding while merely a creditor with an unliquidated claim. See Levy v. Markal Sales Corp., 724 N.E. 2nd 1008, 1012 (Ill. App. Ct. 2000) ("[T]he limitations provision [in the UFTA] requires a creditor in certain instances to institute action before judgment in order to preserve his claim against the fraudulent transfer. Although a creditor may elect to pursue his claim to judgment before instituting a fraudulent transfer action, he does so at the risk of losing his right to relief.")

But as soon as Harris had a judgment in hand, it would be acting as a judgment creditor if it attacked the Transfer. Filing a fraudulent transfer complaint would be an action to enforce its judgment and thus a violation of the Stay Order.

Indeed, Werner appears to have acknowledged the validity of this argument in his Response in Opposition to the Reconsideration Motion. When opposing Harris's request to take discovery, Werner wrote, "First, there is no action pending in which 'discovery' can be taken. Harris already has a judgment. The action is concluded and a final order has been entered." Since the Cook County Litigation had concluded, Harris became a judgment creditor. If it sought to take discovery, it would be doing so as a judgment creditor.

While one published case with contrary <u>dicta</u> exists,[1] the court finds that if Harris

had filed a fraudulent transfer action against Werner it would have been a step toward

enforcing Harris's judgment. Consequently, such action was prohibited by the Stay

Order, even if Harris acted only to avoid the Transfer and not to levy execution on the

Residence. Since the Stay Order prohibited the filing of a fraudulent transfer complaint,

it tolled the statute of limitations pursuant to 735 ILCS 5/13-216.

**Even If the Fraudulent Transfer Action Would Not Have Been an Enforcement of
Harris's Judgment, the Papers Filed in State Court Regarding the Reconsideration
Motion Indicate that Following the Ruling on the Reconsideration Motion, the Stay
Order Was Meant to Bar Commencement of Such an Action.**

In the state court papers submitted to this court with the motion for summary

judgment, the first mention of a potential fraudulent transfer action is found in paragraph

10 of Werner's Emergency Stay Motion (citations omitted):

> Harris recently orally questioned the validity of the Werners' conveyance
> of their residence ... to tenancy by the entireties in 2003. That transaction,
> however, is not subject to being set aside under the "sole intent" standard
> set forth in section 12-112 of the code of civil procedure. Werner certifies
> that the conveyance was made in part to accomplish a survivorship
> objective by the manner in which the property was previously titled.

Harris did not mention the possibility of filing a fraudulent transfer action in its

Response to Emergency Stay Motion; the response is limited to vigorously opposing the

notion that Werner could be exempted from posting an appeal bond sufficient to cover

the amount of the judgment, interest and costs. Neither does Werner raise the issue again

in the Reply to Emergency Stay Motion.

---

[1]    <u>Ullman-Briggs, Inc. v. Salton/Maxim Housewares, Inc.</u>, 1996 WL 535083 (N.D. Ill. Sept. 17,
1996). A judgment was entered in a New York court. That judgment defendant transferred assets to
another party. The <u>Ullman-Briggs</u> plaintiff brought a fraudulent transfer action against the judgment
defendant as well as the transferee. The transferee brought a motion in limine to bar the use of the prior
judgment. The <u>Ullman-Briggs</u> court determined that the judgment could be admitted as <u>prima facie</u>
evidence of the debt against the transferee, because "[t]his is not an action to enforce the New York
Judgment. Rather, it is an action alleging a fraudulent transfer of assets."

Nevertheless, the Stay Order states at Paragraph 1(d), "Werner to file affidavit that he shall not convey interest in residence or any other assets outside ordinary course (but may pay legal expenses) pending appeal." This appears to be a reference to Werner's request that he be allowed to pay ordinary living expenses and legal fees pending appeal rather than any indication that the Stay Order precluded commencement of a fraudulent transfer action.

The Stay Order, however, did not end the post-judgment motion practice in trial court. On April 27, 2006, Harris filed its Reconsideration Motion. In the first full paragraph of the Reconsideration Motion, Harris described the transfer of the Residence, characterizing it as "obviously a fraudulent transfer accomplished with the sole intention of preventing Harris from attaching that property in order to collect a judgment (which it has since obtained from this Court)."

Most of the Reconsideration Motion was devoted to urging the court to raise the amount of the appeal bond Werner posted. The last paragraph of the argument section, however, revisited the issue of the potential fraudulent transfer (emphasis added):

> Further, this Court's March 16, 2006 Order did not directly address Werner's fraudulent transfer of his residence. Specifically, on February 4, 2003, Werner and his wife altered ownership of their residence from tenants in common to tenants by the entirety. This was done, not coincidentally, less than one month after Werner's motion for injunction against Harris was denied by the Cook County Chancery Court on January 10, 2003. The timing of this property ownership change was plainly accomplished with the sole intention of preventing Harris from attaching that property in order to collect a judgment. **At a minimum, Harris should be permitted to take discovery regarding that property transfer, so that it may bring a proceeding that would undo this transaction, without having to wait for the appellate process to run its course.**

In the Reconsideration Motion, Harris clearly asked the state court to modify the

Stay Order so that it can take discovery regarding the transfer of the Residence, and

indicated its intent to file a fraudulent transfer action.

In his Response, Werner devoted several paragraphs of argument to Harris's

request to take discovery:

> There are at least three reasons why Harris' request for 'discovery' should
> be denied. First, there is no action pending in which 'discovery' can be
> taken. Harris already has a judgment. The action is concluded and a final
> order has been entered. Harris' ability to challenge the conveyance (if the
> issue is still relevant after the appeal) is protected pursuant to the provision
> of the [Stay] Order which restricts transfer of Werner's residence pending
> appeal.
>
> Second, the issue of the transfer of the residence was considered on the
> prior [Emergency Stay] motion. Harris presented no new evidence or
> argument that the Court did not already take into account when it rendered
> its prior decision. The Court directed Werner to file an affidavit
> committing not to transfer any interest in the residence pending appeal.
> Werner complied with that Order.
>
> Third, the request for 'discovery' is the equivalent to denying the stay. The
> only manner in which 'discovery' could be taken is by a new action or
> citation proceeding for the purpose of liquidating Werner's interest in the
> residence to satisfy the judgment. The expense of defending that action,
> which may become moot after appeal, and the possibility of loss of real
> estate which could never be returned in the event the judgment is reversed
> are the very reasons a stay was granted in the first place.

On May 11, 2006, Harris filed the Harris Reply Brief. In it, Harris reiterates its

request to take discovery regarding the Transfer:

> Although the issue was raised by Werner himself in his Motion to Stay,
> this Court's [Stay Order] did not directly address Werner's fraudulent
> transfer of his residence. . . . The timing of this property ownership
> change was plainly accomplished with the sole intention of preventing
> Harris from attaching that property in order to collect a judgment. Werner
> objects to Harris' request to modify the [Stay] Order to permit discovery
> into this issue, but puts forth no compelling reason for his objection.
> Harris should not be forced to wait until the appellate process is complete
> to discover information about how it may collect on its judgment when the

appeal is complete (assuming Harris prevails). Discovery will not lead to collection, merely information.

On June 15, 2006, the state court denied Harris' Reconsideration Motion.

Harris argues to this court that "based on the state court proceedings and the state court's ruling on Harris' request for clarification, if it had brought an action against the Residence during appeal, it would have been exposing itself to potential contempt of court proceedings and sanctions."

Having read the papers submitted in state court on the Emergency Stay Motion and on the Reconsideration Motion, this court agrees with Harris's conclusion. Harris requested permission to take discovery regarding the Transfer. That request was denied. If Harris had then proceeded to initiate a fraudulent transfer action, the court has no doubt of the hue and cry that Werner would have raised. All of Werner's arguments as to why discovery should be barred -- Harris's ability to challenge the conveyance was protected pursuant to the provision of the Stay Order, the expense of defending a fraudulent transfer action, which might become moot after appeal, and the possibility of loss of real estate which could never be returned in the event the judgment is reversed -- apply even more to the commencement of an action than to initiating discovery. And since the state court had already ruled that Harris could not commence discovery, this court suspects that if Harris skipped discovery and proceeded directly to filing a fraudulent transfer action, the state court might have seen that as an end run around its prior ruling.

For all of these reasons, the court finds that the papers filed in state court regarding the Emergency Stay Motion and the Reconsideration Motion indicate that following the ruling on the Reconsideration Motion, the Stay Order precluded commencement of a fraudulent transfer action. Since the post-Reconsideration Motion

Stay Order prohibited the filing of a fraudulent transfer complaint, it tolled the statute of

limitations pursuant to 735 ILCS 5/13-216.

### The Statute of Limitations Provision in the Uniform Fraudulent Transfer Act is Not Akin to a Statute of Repose, and Even If It Were, It Could Still Be Tolled.

Werner argues that the Uniform Fraudulent Transfer Act's four year statute of

limitations is like a statute of repose, operating as a bar regardless of when the injury was

discovered. This cannot be true, because the UFTA allows actions to be brought "within

4 years after the transfer was made or the obligation was incurred or, if later, within one

year after the transfer or obligation was or could reasonably have been discovered by the

claimant." 740 ILCS 160/10(a)(1). The very text of the statute itself allows actions to be

brought later than four years after the transfer occurred if the plaintiff reasonably could

not have discovered that the transfer took place.

Moreover, even if the time limit in the UFTA is a statute of repose, the Illinois

Supreme Court has applied tolling provisions to statutes of repose.  DeLuna v. Burciaga,

857 N.E. 2nd 229 (2006). Werner made no reply to these arguments, raised by Harris in

its response, and the court finds that the statute of limitations provision in the Uniform

Fraudulent Transfer Act is not comparable to a statute of repose. The time limitation may

be tolled if the appropriate conditions are satisfied.

### To the Extent the Stay Order Precluded Commencement of a Fraudulent Transfer Action Against Werner, Such Action Was Also Barred Against Beth Werner.

In his motion for summary judgment, Werner argues that the statute of limitations

was not tolled as to Beth Werner, and that Harris is now barred from naming her as a

defendant. As Harris points out, however, the Stay Order prohibited Harris from taking

any action against the Residence, rather than against a specific person. Werner's reply

did not include any rebuttal to this argument, and the court agrees with Harris's position.

On this basis, the motion for summary judgment is denied as to Beth Werner.

The court notes, however, that Harris's second argument on this issue is a non-starter. Harris contends that under Illinois law, all parties who have an interest in the property conveyed must be joined to the fraudulent transfer litigation. Tcherepnin v. Franz, 439 F. Supp. 1340, 1343 (N.D. Ill. 1977) ("In an action such as Count IX to set aside a fraudulent conveyance pursuant to Illinois law all parties who may be interested or affected by the judgment of the court should be joined as parties.") Harris asserts that it could not sue Beth Werner without also naming Bruce Werner as a necessary party, especially since the Werners held the real estate as tenants by the entirety.

However, "the decisions are virtually unanimous in holding that the spouse of a debtor is not a necessary party to a fraudulent conveyance action, even if she joined in the conveyance alleged to be fraudulent." Reagan v. Baird, 487 N.E. 2nd 1028, 1032 (Ill. App. Ct. 1985). Whether or not Beth Werner is a necessary party is, at this point, merely a matter of academic interest. To the extent the Stay Order, as modified by the Reconsideration Motion papers, barred Harris from commencing a fraudulent transfer action whose subject was the conveyance of the Residence, it also barred Harris from proceeding against Beth Werner.

### Judicial Estoppel Does Not Bar Werner From Raising the Argument That the Statute of Limitations Has Passed.

Under the doctrine of judicial estoppel, a party assuming a position in a legal proceeding may not assert a contrary position in a subsequent proceeding simply because his interests have changed. In re Cassidy, 892 F. 2nd 637, 641 (7th Cir.), cert. denied sub nom. Cassidy v. C.I.R., 498 U.S. 812 (1990). Harris argues that Werner is barred by

judicial estoppel from contending that the Stay Order did not preclude Harris from taking

any steps to pursue its fraudulent transfer claim.

The parties agree on the legal elements needed to establish judicial estoppel.

"Judicial estoppel may apply when (1) the later position is clearly inconsistent with the

earlier position; (2) the facts at issue are the same in both cases; (3) the party to be

estopped convinced the first court to adopt its position; and (4) the party seeking to assert

an inconsistent position would derive an unfair advantage or impose an unfair detriment

on the opposing party if not estopped." U.S. v. Christian, 342 F. 3rd 744, 747 (7th Cir.

2003). The doctrine extends to inconsistent positions of law as well as fact. Cassidy, 892

F. 2nd at 642 ("[W]e think that the change in position on the legal question is every bit as

harmful to the administration of justice as a change on an issue of fact.").

The court does not find Werner's position now to be "clearly inconsistent" with

his earlier position, especially in light of the Circuit's instruction to be judicious in the

application of this doctrine. See Levinson v. U.S., 969 F. 2nd 260, 265 (7th Cir. 1992)

("Judicial estoppel is applied with caution to avoid impinging on the truthseeking

function of the court . . .") (citation omitted). In state court, Werner opposed Harris's

request to take discovery regarding the Transfer. In this proceeding, he contends that the

Stay Order did not bar Harris from commencing a fraudulent transfer action. These

positions are related, but not identical. Prior to the commencement of this adversary

proceeding, Werner did not take an explicit position on the effect of the Stay Order on the

statute of limitations.

Even if Werner's arguments could be construed as leading logically to the

conclusion that the Stay Order operated as a bar, the court does not find that Werner

24

"prevailed upon the first court to adopt" this conclusion. Certainly he urged the state court to deny Harris's request to conduct discovery. But that is not the same as urging the state court to prohibit commencement of a fraudulent transfer action.

This court's determination that judicial estoppel does not prohibit Werner from raising a statute of limitations defense is not inconsistent with its earlier conclusion that the Stay Order, as modified by the Reconsideration Motion papers, barred discovery and thus may have tolled the statute of limitations on commencing a fraudulent transfer action. In considering the issue of estoppel, the court must review a party's actions and positions at the time they occurred, rather than with the benefit of legal hindsight.

**Werner May Be Equitably Estopped From Raising a Statute of Limitations Defense if Supporting Evidence is Presented at Trial.**

Equitable estoppel requires a slightly different analysis, although as with judicial estoppel the parties agree on the legal standard. In an opinion that considered when the statute of limitations for attacking a fraudulent transfer began to run, Judge Bucklo wrote, "[t]he Illinois courts have said that a party may be equitably estopped from asserting the statute of limitations 'where it would be unjust to permit the litigant to disavow express and implied statements upon which another party has relied and which have caused him to forgo filing his suit.' Smith v. Cook County Hosp., 164 Ill. App. 3rd 857, 115 Ill. Dec. 811, 518 N.E. 2nd 336, 342 (1987)." Johnstone v. Wabick, 207 F. Supp. 2nd 824, 828 (N.D. Ill. 2002).

Although an intent to mislead or deceive is not a required element of equitable estoppel, 207 F. Supp. 2nd at 828, the plaintiff "must be able to show that the defendant said or did something to lull or induce the plaintiff to delay the filing of his claim until after the limitations period has run." Id.

The court finds a disputed issue of fact as to whether Werner made "express or implied statements" upon which Harris relied in waiting to commence a fraudulent transfer action. Harris may have relied on statements made by Werner in his Emergency Stay Motion ("Werner certifies that the conveyance was made in part to accomplish a survivorship objective by the manner in which the property was previously titled.") or in his response to the Reconsideration Motion ("Harris' ability to challenge the conveyance (if the issue is still relevant after the appeal) is protected pursuant to the provision of the [Stay] Order which restricts transfer of Werner's residence pending appeal.").

Or Harris may have refrained from acting because of the legal effect of the Stay Order following denial of the Reconsideration Motion. As Harris points out in footnote 14 to its response, it assumed that the state court would not "have looked 'with favor' on such conduct, to say the least." Indeed, Harris may not have considered filing a fraudulent transfer action at all until the bankruptcy case was filed.

The court cannot make a finding at this time as to which, if any, of these scenarios are correct. Instead, the parties may present evidence at trial regarding the reasons Harris did not file a fraudulent transfer action. If the evidence supports a finding that Werner is equitably estopped from raising a statute of limitations defense, the court will make such a finding at the appropriate time.

## CONCLUSION

An unresolved question of fact exists as to whether Harris's inability to take discovery precluded Harris from commencing a fraudulent transfer action without running afoul of Rule 11. If it did, the statute of limitations was tolled. The summary judgment motion may be denied on this point alone.

There is no question of fact, however, regarding this court's conclusion that the Stay Order, following the ruling on the Reconsideration Motion, precluded Harris from filing a fraudulent transfer action. As such, the statute of limitations was tolled pursuant to 735 ILCS 5/13-216. Werner cannot successfully raise the defense that the statute of limitations has passed.

Even if the discovery bar and the post-Reconsideration Motion Stay Order did not preclude Harris from challenging the fraudulent transfer, Werner may be equitably estopped from raising a statute of limitations defense. If the parties wish to do so, they may present evidence at trial as to why Harris did not file a fraudulent transfer action until May 9, 2007, including whether the discovery bar placed Harris at risk of sanctions under Rule 11 if it filed a complaint.

The motion for summary judgment is denied.

Date: _____ APR 1 5 2008

_____
PAMELA S. HOLLIS
United States Bankruptcy Judge